NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-289

COMMONWEALTH

vs.

DENNIS BRIAN BANKS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of assault with a dangerous weapon on a person sixty years or older, in violation of G. L. c. 265, § 15B (a). On appeal, he claims that the evidence was insufficient to support his conviction.  We affirm.

Background.  Viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the jury could have found the following.  On May 3, 2022, at approximately 11:15 P.M., the victim, who was sixty-one years old at the time, was cleaning his car in the parking lot of a gasoline station in Jamaica Plain.  The defendant was sleeping in a minivan parked next to

the victim's car.  The victim did not notice the defendant until he heard someone "screaming" at him.  The defendant told the victim that he was making "too much noise" and that he needed to "go somewhere else."  The victim objected and replied that he had the "right to clean up [his] car right here."  The defendant demanded that the victim leave "immediately," but to no avail.  The victim refused to leave and repeated that he had a right to be at the gasoline station.

At this point, the defendant emerged from the minivan and was standing about twenty feet away from the victim.  He told the victim "you don't know who you're messing with" and pulled out a knife.  While holding the knife, the defendant also said, "I can put you [the victim] to sleep any minute."  The victim described the knife as having a one to two-inch-long silver blade.

Upon seeing the knife, the victim walked away and called the police because he believed that the defendant "was going to attack [him]."  Shortly thereafter, Boston police Officer Patrick Lynch arrived and spoke with both parties.  The defendant, who had remained standing next to his minivan, informed the officer that he told the victim "to get away from me."

The defendant did not present any evidence.  Through cross-examination and argument, he challenged the victim's version of

2

the events.  In response to questions posed by defense counsel, the victim acknowledged that the defendant never stepped toward him during the altercation.  In his closing remarks, defense counsel characterized the verbal exchange between the parties as "essentially territorial trash talk" and emphasized the lack of evidence to corroborate the victim's testimony, including the fact that the police did not recover a knife.

Discussion.  At trial, the Commonwealth proceeded under the theory of an immediate threatened battery and that the knife, as used, was a dangerous weapon.  In order to meet its burden of proof, the Commonwealth was required to prove that "the defendant engaged in conduct that a reasonable person would recognize to be threatening, that the defendant intended to place the victim in fear of an imminent battery, and that the victim perceived the threat."  Commonwealth v. Porro, 458 Mass. 526, 530-531 (2010).  To convict under the immediate threatened battery theory, "[t]he victim need not actually be in fear, but must apprehend the risk of an imminent battery."  Id. at 531. In addition, the Commonwealth was required to prove that the defendant accomplished the assault using a dangerous weapon. See Commonwealth v. Buttimer, 482 Mass. 754, 768 (2019).

3

The Commonwealth's evidence, as the judge observed, was less than overwhelming.[1] That said, under the applicable standard of review, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Here, the testimony of the victim was sufficient, albeit barely so, to meet the Commonwealth's burden. The victim testified that he saw the knife at or about the time the defendant made two threats ("you don't know who you're messing with" and "I can put you [the victim] to sleep any minute"). We conclude, contrary to the defendant's argument, that holding the knife while making the explicit threats -- even without stepping forward -- was sufficient for the jury to find that the victim (or any reasonable person) would have "apprehend[ed] the risk" of an imminent battery beyond a reasonable doubt. Porro, 458 Mass. at 531. Also, the jury could have reasonably inferred that the defendant, who clearly wanted the victim to leave the area, intended to place the defendant in fear. Lastly, the evidence was sufficient to establish that the knife, as described by the

---

[1] In denying the defendant's motion for a required finding of not guilty, the judge stated, "I guess this is certainly the closest call I've ever had before."

victim, was capable of causing serious physical harm.

Judgment affirmed.

By the Court (Vuono, Henry & Wood, JJ.[2]),

*Paul Little*

Clerk

Entered:   June 2, 2025.

---

[2] The panelists are listed in order of seniority.